

**Tagged for Publication**

**ORDERED in the Southern District of Florida on February 07, 2011.**

John K. Olson, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
**Fort Lauderdale Division**
www.flsb.uscourts.gov

**In re:**

        Nidia Amparo **Orozco**,

              Debtor.
_____/

Case No. 10-33094-BKC-JKO

Chapter 7

**Order Granting Motion to Compel / Motion for Turnover [ECF No. 8]**

On August 9, 2010, the Debtor filed an Emergency Motion to Compel and Motion for Turnover of Property. *See* [ECF No. 8]. The matter was initially heard on August 12, 2010 at 10:00 AM, the motion was granted in-part and denied in-part, and I scheduled an evidentiary hearing for September 10, 2010. *See* [ECF Nos. 9, 20, 21, 49 & 68]. The evidentiary hearing was continued several times and finally conducted on October 22, 2010 at 9:30 AM. The dispute turns on the extent of the personal property exemption available to the Debtor under applicable Florida law, and arises out of a prepetition levy on the Debtor's household goods by a judgment creditor whose judgment lien had attached to those goods to the extent that they are not exempt.

1

This Debtor is unquestionably entitled to the $1,000 personal property exemption under the Florida Constitution. I directed briefing, however, on the issue of whether this debtor can exempt an additional $4,000 given that she initially did not claim, then claimed, and then disclaimed the benefit of Florida's constitutional homestead exemption. On November 11, 2010, the Debtor filed a Memorandum of Law in Support of her Motion to Compel and Motion to Turnover of Property. *See* [ECF Nos. 91 & 92] On November 12, 2010 the Creditor filed a Memorandum of Law in Opposition to the Debtor's motions. *See* [ECF No. 92].

A.   **Factual Background**

In this case, the debtor, Nidia Amparo Orozco, ("Ms. Orozco") seeks to compel the return of personal property that remains in the possession of levying creditor, Leigh R. Miller ("Miller"). Miller has returned some of Ms. Orozco's personal property. Ms. Orozco, however, claims that the personal property remaining in Miller's possession is exempt from bankruptcy proceedings under Florida statute § 222.25(4). Miller asserts that Ms. Orozco is not entitled to the benefit of § 222.25(4) because her amendment was untimely and made in bad faith, and thus that the amendment was improper. Miller also contends that Ms. Orozco cannot use § 222.25(4) because she is receiving the benefit of the homestead exemption through her ex-husband. Lastly, Miller asserts that because Ms. Orozco has already claimed Florida's constitutional personal property exemption she cannot also use § 222.25(4) to exempt property.

B.   **Florida Statute § 222.25(4) and "Receiving the Benefits" in the Bankruptcy Context**

In 2007 the Florida legislature provided an additional personal property exemption to debtors who do not or cannot take advantage of Florida's constitutional homestead provision.

*In re Hafner*, 383 B.R. 350, 352–53 (Bankr. N.D. Fla. 2008).  Florida statute § 222.25(4) states the following:

> The following property is exempt from attachment, garnishment, or other legal process . . .
> . . .
> A debtor's interest in personal property, not to exceed $4,000, if the debtor does not claim or receive the benefits of a homestead exemption under s. 4, Art. X of the State Constitution . . .

Fla. Stat. § 222.25(4) (2010).  Courts had agreed that only those debtors who do not benefit directly or indirectly from Florida's constitutional homestead provision may use § 222.25(4) to exempt additional personal property. *In re Morales*, 381 BR 917, 920 (Bankr S.D. Fla. 2008).  But they had "disagree[d] on how to determine when a debtor 'receiv[es] the benefits'" of Florida's constitutional homestead provision. *In re Iuliano,* No. 8:09-bk-04904, 2010 Bankr. LEXIS 4728, at *6 (Bankr. M.D. Fla. Dec. 28, 2010).

Some courts interpreted § 222.25(4)'s language "receive the benefits" broadly.  Those courts held that a debtor may only utilize the benefits § 222.25(4) if the debtor clearly expressed an intent to abandon the homestead property. *Id.* at *7–8.  Those courts relied on the "self-executing" nature of Florida's homestead exemption to conclude that it applies until property is abandoned or alienated. *In re Rogers*, 396 B.R. 100,104 (Bankr. M.D. Fla. 2008).  They also believed that a debtor was receiving the benefit of the homestead exemption if:

> (1) the debtor own[ed] and reside[ed] in a home at the time that he fil[ed] his bankruptcy petition; (2) the debtor [did] not claim the home as exempt on his bankruptcy schedules; (3) the debtor's schedules reflect[ed] that the home [was] fully encumbered, and nothing in the record indicat[ed] that the estate ha[d] any equity in the property; and (4) as of the petition date, the debtor intend[ed] to retain and live in the home as his principal residence.

*In re Kent*, 411 B.R. 743, 756 (M.D. Fla. 2009).

3

Other courts took a narrow view of the phrase "receive the benefits." *In re Iuliano*, 2010 Bankr. LEXIS 4728, at *7. Courts taking the narrow view held that debtors had not received the benefit of the homestead exemption so long as they **did not**: (1) affirmatively exempt their property under the constitutional homestead exemption; or (2) use an alternative method to protect the property from creditors, therefore, leaving the property open to bankruptcy administration. *Id.* The courts that adopted this view believed that a debtor who had not utilized either of the former protection methods should be entitled to the § 222.25(4) exemption. Additionally, the courts that followed this view believed that "benefits" should be determined on a case by case basis. *Id.* at *7–8 (citing *In re Bennett*, 395 B.R. 781, 790 (Bankr. M.D. Fla. 2007)). These courts tended to focus on the rule that exemptions are to be construed liberally in favor of the party claiming the exemption. *Id.*; *In re Hafner*, 383 B.R. 350, 353 (Bankr. N.D. Fla. 2008). They also took into account the fact that if a homestead was not claimed as exempt in a Chapter 7 proceeding it could be administered by the trustee of the bankruptcy estate. *In re Bennett*, 395 B.R. at 789.

The Supreme Court of Florida has within this last week issued an opinion resolving the dispute over the meaning of "receives the benefits" in the bankruptcy context. *Osborne v. Dumoulin*, No. SC09-751, at 23 (Fla. Feb. 3, 2011) (*available at* http://www.floridasupremecourt.org/decisions/2011/sc09-751.pdf.). The Supreme Court of Florida in *Osborne v. Dumoulin* adopted the narrow view of the language "receives the benefits." *Id.* The Court held that the narrow view more faithfully applied the language and intent of § 222.25(4).

The Court stated that because the only protection that the exemption provides is protection from forced sale or levy (in most circumstances) the only "benefit" that could possibly

4

flow from the constitutional homestead exemption was protection from creditors.[1] The court reasoned that if a bankruptcy debtor *does not claim* the homestead exemption he leaves the homestead open to administration by the trustee. *Id.* at 17 (Conversely, if the debtor does claim the homestead exemption he is receiving the benefits of the constitutional homestead exemption.). Although it is true that homestead normally is not lost unless affirmatively abandoned or alienated, the extra affirmative step is unnecessary in the bankruptcy context because the benefits of the homestead exemption are lost by virtue of vulnerability to administration by the trustee. *Id.*

The court further stated that it does not matter if the homestead is not administrated by the bankruptcy trustee because that is a decision made "by the trustee . . . and does not negate the debtor's loss of the benefits of the homestead exemption. The Court reasoned that because "receives the benefit" uses the present tense it narrows the relevant time period to when the debtor actually asserts the personal property exemption. *Id.* at 20. "Whatever benefits may flow to the debtor as a consequence of the trustee's decision . . . are not 'benefits of a homestead exemption.'" *Id.* at 19. The Court concluded that where a debtor does nothing to prevent administration by the bankruptcy trustee he loses the benefit of the homestead exemption and may properly use § 222.25(4) to exempt $4,000 of personal property. *Id.* at 24.

**C.    Effectively Extinguishing "Benefits" after Claiming
         the Constitutional Homestead Exemption**

Here, the key issue is the validity of Ms. Orozco's final amendment disclaiming her homestead after claiming her homestead in her Schedule C. Relying on *In re Morales* (which

---

1. "Benefits" "only refer to the protection of the homestead from the reach of creditors provided by the article X homestead exemption." Benefits like shelter, owner's equity or tax exemptions do not stem from the protection from creditors provided by section 4, article X of the Florida Constitution. *Osborne v. Dumoulin*, No. SC09-751, at 5, 17.

5

was based upon the now rejected broad view of "receives the benefits") Miller contends that because the amendment was untimely it was ineffective and left Ms. Orozco with the benefits of the constitutional homestead exemption. Miller believes that the amendment was untimely because it was filed several months after the initial Chapter 7 case, and pursuant to Bankruptcy Rule 1009(a), rather than, Bankruptcy Rule 1009(b).

In *In re Martias*, where a debtor initially claimed her homestead as exempt and amended it several months later to reflect that the property was non-exempt, the court held that "the debtor properly amended her schedules pursuant to Rule 1009(a), which permits the amendment of schedules 'as a matter of course at any time before the case is closed.'" *In re Martias*, No. 07-20488, 2008 WL 906776, at *4–5 (Bankr. S.D. Fla. 2008). Additionally, in *In re Shoopman*, the court stated that the timeliness of the Debtor's intent to disclaim his homestead was "irrelevant to the Court's determination that the Debtor did not receive the benefits of the constitutional homestead exemption." That court went on to conclude that a debtor would be entitled to use § 222.25(4) regardless of whether he timely amended his schedule as long as he did "not claim the constitutional homestead exemption or . . . otherwise receive its benefits."[2] *In re Shoopman*, No. 07-19450, 2008 WL 817109, at *1 (Bankr. S.D. Fla. March 25, 2008).

Ms. Orozco followed the same procedure as the debtor in *In re Martias*. The amendment was timely, and therefore, Ms. Orozco was not receiving the benefit of the homestead exemption when she asserted her personal property exemption under § 222.25(4). However, if the amendment is shown to be improper it may be disallowed even if timely. Assuming for the

---

2. Ms. Orozco continues to reside in the residence in question, she has not utilized any protection method that would prevent the residence from being administered by the bankruptcy estate. *See In re Iuliano*, 2010 Bankr. LEXIS 4728, at *9.

6

moment that the amendment was proper, I first address Miller's concern that Ms. Orozco was receiving an indirect benefit through her ex-husband as well as Miller's contention that § 222.25(4) cannot be used in conjunction with Florida's constitutional personal property exemption.

### D.    Otherwise Receiving the Benefit

A debtor who does not claim the constitutional homestead exemption may otherwise receive the benefit of the homestead exemption. Each debtor's circumstances must be examined on a case by case basis to determine whether the debtor is receiving the benefits of the homestead exemption through another avenue. *Dumoulin, supra*, at 22. Here, Miller argues that if Ms. Orozco has effectively disclaimed her homestead exemption she was otherwise receiving the benefit through her ex-husband. Miller relies on *In re Watford*, 427 B.R. 552 (Bankr S.D. Fla. 2010). In that case, the court held that the debtor received an indirect benefit and disallowed the § 222.25(4) personal property exemption because the debtor was indirectly receiving the benefit of the homestead exemption through her husband. In that case, the debtor held the homestead property with her husband as tenants by the entireties. Here, that is not the case. Ms. Orozco and Mr. Orozco are divorced.[3] They do not hold the homestead as tenants by the entireties since only married persons can do so under Florida law. Ms. Orozco is not otherwise receiving the benefits of the homestead exemption by virtue of her relationship with her ex-husband. *See In re Shoopman*, 2008 WL 817109, at *5–6, n.2 (stating that since the debtor did not have a wife to claim the homestead exemption there was no circumstance that indirectly

---

3. In Miller's initial response to Ms. Orozco's Emergency Motion to Compel Turnover, Miller asserted that the Orozco's divorce was invalid. *See* [ECF No. 12], at 3. However, in Miller's Post-Hearing Memorandum, Miller appeared to concede to the fact that the divorce was valid because Miller did not assert any additional facts regarding the validity of the divorce, and Miller referred to Mr. Orozco as the Debtor's "former spouse." *See* [ECF No. 92], at 4-5.

bestowed the benefits of the homestead exemption upon him).  So long as Ms. Orozco's final amendment to her Schedule C was proper, she has not received a benefit under the constitutional homestead exemption and she is entitled to the $4,000 personal property exemption under § 222.25(4).  This finding would necessitate the turnover of Ms. Orozco's personal property levied upon by Miller.  However, the propriety of Ms. Orozco's final amendment must be looked at.

**E.     Stacking § 222.25(4) and Article X, Section (4)(a)(2) personal property exemptions**

Miller contends that both personal property exemptions cannot be used simultaneously.  Both the statutory and constitutional personal property exemptions[4] may be utilized so long as a debtor is not also claiming the constitutional homestead exemption.  *In re Bezares*, 377 B.R. 413, 414–15 (Bankr. M.D. Fla. 2007).  Florida's legislature is without the power to alter or amend Florida's constitution through a statutory provision.  *Id.*  Hence, disallowing the use of both provisions would be unconstitutional in such a case.  Miller cites no authority to support the contention that the statutory and constitutional personal property exemptions are mutually exclusive.  Ms. Orozco, however, cites to several cases that conclude that both exemptions are available where a debtor has not received the benefit of the constitutional homestead exemption.  *See id.*; *In re Mootosammy*, 387 B.R. 291, 397–98 (Bankr. M.D. Fla. 2008); *see also In re Hafner*, 383 B.R. 350, 353–54 (Bankr. N.D. Fla. 2008).  So long as Ms. Orozco's final amendment to her Schedule C is proper she may exempt personal property worth up to $5,000 by stacking § 222.25(4) and Article X, Section (4)(a)(2) of Florida's Constitution's personal

---

4.  The $1,000 personal property exemption has been a feature of Florida's Constitution since the 1868 Constitution—adopted at a time when $1,000 represented a significant amount of personal property for a typical Floridian. It was the penurious nature of that exemption in light of modern financial reality that prompted the Business Law Section of The Florida Bar to propose, and the Florida Legislature to adopt, the additional $4,000 exemption at issue here.  The research which led the Business Law Section to propose that legislation was undertaken by Douglas W. Neway, now the standing Chapter 13 trustee in the Jacksonville Division of the Bankruptcy Court for the Middle District of Florida.

property exemptions together. This finding would require Miller to turn over Ms. Orozco's property. The propriety of Ms. Orozco's final amendment, however, remains to be examined.

**F.     Improper Amendment**

The court interprets Miller's memorandum, *see* [ECF No. 92], at 5, as a timely objection to the propriety of Orozco's final amendment disclaiming the homestead exemption and claiming the $4,000 personal property exemption. Miller could show the final amendment was improper, and it would be disallowed, by proving bad faith, prejudice or concealment of assets by clear and convincing evidence. *In re Martias*, 2008 WL 906776, at *5. If bad faith, prejudice or concealment is proven, the homestead would remain an exempt asset. Hence, if bad faith, prejudice, or concealment are proven, Ms. Orozco will not be entitled to use § 222.25(4)'s personal property exemption because the schedules will reflect that she affirmatively claimed the benefit of Florida's constitutional homestead exemption. In such a case, Ms. Orozco will be limited to the $1,000 exemption under Florida's constitutional personal property exemption and Miller will not have to turn over any additional personal property to Ms. Orozco.

   *1.     Prejudice*

Prejudice can be established by showing harm to a party's litigation posture as a result of an amendment. *In re Talmo*, 185 B.R. 637, 645 (Bankr. S.D. Fla. 1995). "If the parties would have taken different actions or asserted different positions had the exemption been claimed earlier, and the interests of those parties are detrimentally affected by the timing of the amendment, then the prejudice is sufficient to deny amendment." *Id.* Here, Miller claims that the expense of storage, inspection and appraisal of the personal property was undertaken in reliance on the perception that Ms. Orozco could claim only the $1,000 constitutional personal

9

property exemption and not the statutory exemption allowed under § 222.25(4). My order authorizing inspection and appraisal of the personal property was entered on September 23, 2010. The personal property had been taken from Ms. Orozco's possession on April 6, 2010. The amendment indicating that Ms. Orozco intended to claim her homestead as exempt occurred on September 30, 2010. Miller undertook the inspection, appraisal and storage of the property before Ms. Orozco filed her bankruptcy petition, let alone before she gave any notice that she intended on claiming her homestead exemption and before Ms. Orozco would have been precluded from using the additional exemption found under § 222.25(4). Ms. Orozco's subsequent amendment deleting her residence from the exempted property in Schedule C had no effect on Miller's actions. Ms. Orozco's amendment did not prejudice Miller's litigation posture. Accordingly, the amendments to Ms. Orozco's schedules cannot be disallowed on the basis of prejudice.

## 2.    *Concealment*

Concealment can support the denial of an amendment to a schedule if proven by clear and convincing evidence. *Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir. 1982) (decision based on Bankruptcy Rule 110, the predecessor to Rule 1009.). Here, Ms. Orozco did not attempt to conceal the property she sought to exempt or attempt to conceal the homestead she wanted to disclaim as exempt. However, Miller has pointed to other assets to support the claim of concealment, including disposition of an office property that the debtor's ex–husband sold a month prior to her bankruptcy filing. Ms. Orozco's ex-husband owned the property, not Ms. Orozco. That transaction does not show fraudulent concealment on Ms. Orozco's part. Next, the creditor points to the fact that Ms. Orozco had an interest in property located in Medellin, Colombia that was concealed from the court until it was brought to the court's attention by

Miller. In *In re Talmo*, the court concluded that a "[c]ourt may also disallow an amendment to schedules if the debtor has attempted to conceal from creditors the assets that the debtor now seeks to claim as exempt." *In re Talmo*, 185 B.R. at 649; *see also In re Doan*, 672 F.2d at 833. Here, however, the Colombian apartment is not the asset that the debtor has actually sought to claim as exempt or non-exempt. Miller also asserts that Ms. Orozco's failure to disclose the current location of funds from a $400,000 loan and $450,000 sale amounts to concealment. Again, this is not the property Ms. Orozco actually seeks to claim as exempt or non-exempt. Miller has not offered clear and convincing proof that Ms. Orozco concealed the asset she seeks to claim as non-exempt. *In re Martias*, 2008 WL 906776, at *5. Accordingly, Ms. Orozco's amendments cannot be disallowed on the basis of concealment.

    *3.     Bad Faith*

Bad faith is also a ground for disallowing amendment to schedules. The focal point in a bad faith analysis is on the debtor's purpose. The concern is whether the debtor delayed her amendment "to gain an economic or tactical advantage, at the expense of creditors and the interests of the estate." *35; *In re Zwirn*, No. 04-40306, 2007 Bankr. LEXIS 1293, at *5–7 (Bankr. S.D. Fla. 2007). In *In re Talmo*, a debtor "knowingly and intentionally included an asset in his estate for strategic purpose and then sought to exclude it when his plan failed." *In re Talmo*, 185 B.R. at 648. Here, at the time of filing Ms. Orozco owed more on her residence than it was worth. The debtor did not initially claim the homestead as exempt and subsequently changed her mind. Two months later, Ms. Orozco again amended her schedules to reflect that the homestead should be non-exempt property. Interestingly, this matter had been continued several times and Ms. Orozco made this final amendment two days before the final hearing date. Not claiming, claiming and ultimately disclaiming her homestead in these circumstances may

11

certainly raise eye-brows and her actions might even be sufficient to show bad faith by the preponderance of evidence, were preponderance the applicable standard. Bankruptcy law, however, maintains a policy of construing amendments to exemptions in favor of the party claiming the exemption. *In re Hafner*, 383 B.R. at 353. This is why the clear and convincing standard must be met when a party seeks to disallow an amendment. Here, that burden has not been met. Miller has failed to prove bad faith by clear and convincing evidence. Accordingly, Ms. Orozco's amendments cannot be disallowed due to bad faith.

## CONCLUSION

I interpret Miller's memorandum, *see* [ECF No. 92], at 5, as a timely objection to Orozco's final amendment disclaiming the homestead exemption and claiming the $4,000 personal property exemption. I find that the act of not claiming, claiming, and then disclaiming Florida's constitutional homestead exemption does not constitute sufficient prejudice, concealment, or bad faith to disallow the final amendment to the Debtor's schedules. She is accordingly not receiving the benefit of the constitutional homestead exemption and she can use Fla. Stat. § 222.25(4) to claim an additional $4,000 exemption for personal property. Miller is accordingly required to turn over the seized personal property in Miller's possession. The Debtor's motion at **ECF No. 8** is **GRANTED**.

SO ORDERED.

# # #

Copies to:

*The Clerk of Court is directed to provide copies of this order to all registered interested parties.*